NOT FOR PUBLICATION                                                                (Doc. No. 22)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

———————————————————————— :
                                              :
INTERNATIONAL UNION of              :
ELEVATOR CONSTRUCTORS,         :
AFL-CIO, and LOCAL NO. 5,              :
INTERNATIONAL UNION of              :
ELEVATOR CONSTRUCTORS,         :
                                              :    Civil No. 10-823 (RBK/AMD)
            Plaintiffs,                      :
                                              :    **OPINION**
            v.                                 :
                                              :
REGIONAL ELEVATOR COMPANY,   :
                                              :
            Defendant.                     :
———————————————————————— :

**KUGLER**, United States District Judge:

        This labor dispute comes before the Court on the motion of International Union of

Elevator Constructors, AFL-CIO, and Local No. 5, International Union of Elevator Constructors

("Plaintiffs") for summary judgment in this action to enforce their collective bargaining

agreement with Regional Elevator Company[1] ("Defendant" or "Regional").  For the reasons

expressed below, Plaintiffs' motion is granted in part and denied in part.

**I.      BACKGROUND**

        Plaintiffs have brought this action pursuant to the Labor Management Relations Act of

1947 ("LMRA"), 29 U.S.C. § 185, to enforce a collective bargaining agreement that, they claim,

Defendant has breached, and to obtain damages that allegedly flow from that breach.  Regional

was formed in 2003 by William Bodkin and Craig Horstead, who own all stock in the company,

and are Vice-President and President of the company, respectively.  Pls.' Br. in Support of

———————————————
[1] For the purposes of this Opinion, as explained infra in III.A, "Defendant" refers interchangeably to "Regional
Elevator Company" and "Regional Elevator, Inc."

Motion for Summ. J. ("Pls.' Br."), 2.  In 2007, on behalf of Regional, Mr. Bodkin signed a Short

Form Agreement wherein the company agreed to secure its workers from the open employment

list of the International Union of Elevator Constructors, and agreed to wage increases for Union

employees.  Id. at 2-3.  The Short Form Agreement created these provisions in Paragraph 1 by

explicitly incorporating a different agreement between the International Union of Elevator

Constructors and ThyssenKrupp Elevator (the "TK Agreement").  Id. at 2 ("[T]he Employer and

the Union mutually agree to be bound by the terms and conditions of the Agreement between

ThyssenKrupp Elevator and the International Union of Elevator Constructors.").

        Plaintiffs allege that Defendant has violated the TK and Short Form Agreements by

hiring employees who were not on the union's open employment list, paying certain employees

wages lower than those specified in the TK Agreements, failing to make fringe benefit

contributions to Health, Pension, Annuity, Education, and Work Preservation Funds ("the

Plans"), and failing to pay according to the travel pay schedule for those employees compelled to

work in Local 5's primary and secondary jurisdictions.  Plaintiffs seek damages for losses they

claim to have suffered due to these alleged breaches—namely, dues and initiation fees for those

non-union employees employed by Defendant, lost wages for those who were paid less than

union wages, and compensation to the Plans for lost contributions thereto.   Plaintiffs also seek

specific performance of the Short Form and TK Agreements, as well as attorneys' fees and costs

associated with this proceeding.

        Defendant first responds that Plaintiffs assert claims against "Regional Elevator

Company," whereas Defendant's proper corporate name is "Regional Elevator, Inc."  Def.'s Br.,

16.  Therefore, Defendant argues, Plaintiffs will not be able to execute a judgment against

Regional.  Defendant also contends that Plaintiffs do not having standing to seek damages for

non-union employees, or for the Plans, which are not named as indispensable parties in this suit.

Moreover, Defendant points out that, in violation of the TK Agreement, on or about April 23,

2010, Local 5 pulled all union employees from the University of Delaware jobsite in an

unauthorized strike.  Def.'s Br., 7; see also TK Agreement, Pls.' Br., Ex. 2, 9 (Art. XIV, par. 2)

("No strike will be called against the Company by the Union unless the strike is approved by the

International Office of the International Union of Elevator Constructors.  Sufficient notice shall

be given to the Company before a strike shall become effective.").  Accordingly, Defendant

argues that "Plaintiff's right to seek damages under the Short Form Agreement and the TK

Agreement are barred by their own prior breaches of those agreements."  Def.'s Br., 13.

Defendant further argues that Plaintiffs have shown no evidence that it was necessary for

Defendant to utilize the travel pay schedule at any time for any employee.  Id. at 16.  Defendant

further argues that Plaintiffs cannot sue for specific performance of the Short Form and TK

Agreements, since they did not indicate in their Complaint that they were seeking such relief.  Id.

at 12.

## II.    STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material

fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the

evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the factfinder, not the district court.  BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

III.    DISCUSSION

A. Defendant's Corporate Name

Defendant alleges that a judgment cannot be enforced against it in this suit, because its proper corporate name is "Regional Elevator, Inc.," and Plaintiffs have brought suit against "Regional Elevator Company."  Plaintiffs correctly point out that, in the Short Form Agreement binding Regional and Plaintiffs, which is signed by Defendant's Vice-President, Mr. Bodkin, "Regional Elevator Company" is the name of the entity designated as "Employer."  Short Form Agreement, Pls.' Br., Ex. 2, 1.  The words "Regional Elevator" are handwritten on a blank appearing before the typewritten word "Company."  Id.  "Inc." does not appear in the company name.  Id.  Moreover, in signing the Short Form Agreement, Mr. Bodkin wrote "Regional Elevator" in the blank marked "company"; again, "Inc." does not appear.  Id.

Defendant does not appear to argue that "Regional Elevator Company" is an entity separate and distinct from "Regional Elevator, Inc."  Rather, Defendant contends that "Regional Elevator, Inc." is the company's proper corporate name (as Defendant repeatedly avers in its Answer, denying many of Plaintiffs' allegations on the grounds that "there is no such entity as 'Regional Elevator Company'").  Def.'s Answer to Compl.  Therefore, Defendant claims, Plaintiffs were put on notice that their Complaint named the allegedly incorrect Defendant, and thus should have amended their Complaint accordingly.

The Court notes that, according to the Proof of Service, the summons was served on "Bill Bodkin—Owner, who is designated by law to accept service of process on behalf of . . . Regional Elevator Co."  D.I. 3.  Whether or not any judgment entered by this Court can be enforced against Regional Elevator, Inc. is a question separate from the question of whether or not judgment for Plaintiffs may be granted, and the question of enforcement is one that will require

more information, should Defendant seek to pursue this tenuous line of argument.  Mr. Bodkin

received service of process in this matter as a representative of "Regional Elevator Co.," and

Defendant's representatives appear to concede that, factually, they represent the entity that

Plaintiffs intended to sue, even if, as a legal matter, the name used by Plaintiffs in this lawsuit

(and the company name signed by Defendant on the Short Term Agreement) is not Defendant's

registered corporate name.  Therefore, the enforceability of a judgment against an entity calling

itself Regional Elevator, Inc. is one to be considered, if raised again, another day.

### B. Plaintiffs' Alleged Breach: April 2010 Walk-Off

Defendant argues that Plaintiffs cannot attempt to enforce the collective bargaining

agreement, since Plaintiffs themselves breached the agreement on or about April 23, 2010, when

a Local 5 worker, along with a worker from another union, walked off the jobsite without

approval or prior notice.  The TK Agreement prohibits strikes unauthorized by the International

Union of Elevator Constructors, and requires that Defendant receive "sufficient notice" of an

impending strike.  TK Agreement, Pls.' Br., Ex. 2, 9 (Art. XIV, par. 2).   Defendant claims that,

when "Local 5 offered to rescind the strike and once again make union employees available to

Regional, Regional sought to work out the differences between the parties, including the

breaches of agreements committed by Local 5."  Def.'s Br., 14.  Defendant claims that Local 5

rebuffed these attempts without trying to remedy the union's own contractual breach.

Accordingly, Defendant argues, Plaintiff cannot now attempt to enforce the Short Form and TK

Agreements, or to claim damages for alleged breaches that occurred after on or about April 23,

2010.

Plaintiffs rebut this argument by citing to Paragraph 10 of the Short Form Agreement,

which holds as follows:

> It is understood and agreed that notwithstanding the no-strike obligation in Article XIV of the TK Agreement, in the event the Employer fails to pay wages or vacation pay when due or the Employer is over fifteen (15) days delinquent in making contributions to the fringe benefit funds, the Union shall have a right to engage in a strike against such Employer until such time as the wages or vacation pay is paid or the Employer has paid all amounts due to the fringe benefit funds, including interest and liquidated damages, if any.

Short Form Agreement, Pls.' Br., Ex. 2, 2 (par. 10).  Plaintiffs argue that Defendant was over fifteen days late in making certain payments to the fringe benefit funds, and that these allegedly delinquent payments occurred before the April 2010 walk-off.  In support of this, Plaintiffs point to a Settlement Agreement between Mr. Bodkin, Mr. Horstead, and Defendant, with the Trustees of National Elevator Industry Pension, Health, Benefit, Educational Funds, Elevator Constructors Annuity and 401(k) Plans ("NEI" or "Trustees"), filed on June 30, 2010 in the Eastern District of Pennsylvania. Pls.' Br., Ex. 2, 34-43.  The lawsuit settled by the Settlement Agreement was filed on March 22, 2010.  Id. at 35.  The Settlement Agreement includes payment "for the delinquent contributions for the months of September and October 2009," and December 2009-February 2010.  Id. at 35-36.

Accordingly, the Court acknowledges that, as determined in the Settlement Agreement in the Eastern District of Pennsylvania, Defendant was delinquent in making contributions to the Plans before April 23, 2010, and had not yet "paid all amounts due" to those funds.  As a result, Plaintiffs' walk-off falls under the above-referenced Paragraph 10 of the Short Form Agreement, meaning that the walk-off did not constitute a breach of the Short Form and TK Agreements. Defendant suggests that, because it was in the process of negotiating with the Plans for the tendering of the delinquent payments, and because Local 5's own "failure to make required payments under the Reimbursement Agreement was a contributing factor to the payment problems between Regional and the Plans," Defendant's delinquency did not permit Plaintiffs'

walk-off.  Def.'s Br., 14 n.4.  However, Defendant cites no law in support of this proposition, which directly contrasts with the plain language of Paragraph 10 of the Short Form Agreement. Accordingly, the Court finds that Plaintiffs' walk-off does not prohibit their breach-of-contract claims against Defendant.

### C. Hiring of Workers Not on Open Employment List and Failure to Pay These Workers Contract Rates

Plaintiffs allege that, contrary to the Short Form Agreement (which incorporates the terms of the TK Agreement), Defendant failed to hire from the Union's open employment list. Specifically, Plaintiffs allege that Defendant employed two workers not from the open employment list—Morgan E. Deily from May 30, 2010 to September 19, 2010, and also employed Keith A. Lefebure, Jr.  Id. at 3-4.  Defendant does not refute this.  Moreover, Plaintiffs argue that Defendant paid Mr. Deily and Mr. Lefebure wages lower than those guaranteed by the TK and Short Form Agreements.  The TK Agreement required that a mechanic be paid $46.90 per hour, and a first-year apprentice be paid $25.795 per hour.  Pls.' Br., Ex. 2, 121.  As Mr. Bodkin's deposition testimony affirms, Defendant paid Mr. Deily, a mechanic, $30 per hour, and paid Mr. Lefebure, an apprentice, $22.00 per hour.  Dep. Bodkin, Pls.' Br., Ex. 3, 42-43, 51-52.

Although Defendant concedes that it hired two non-union employees whom it paid wages lower than the rate agreed upon by the union, Defendant responds that Plaintiffs are unable to claim damages allegedly suffered by two non-union employees who were paid hourly rates below those rates contracted for by the Union.  Def.'s Br., 11.  The Court finds that Plaintiffs do not have standing to bring suit on behalf of workers who are not union members.  The Third Circuit has explained that, for a plaintiff to have standing pursuant to Article III of the United States Constitution, the following three requirements must be met:

(1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 484-85 (3d Cir. 1998) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). In this case, Plaintiffs have not shown that they themselves suffered an injury in fact because Mr. Deily and Mr. Lefebure—who, as Plaintiffs themselves underscore, were not union members—were paid lower than agreed-upon wages. Therefore, while Plaintiffs may be able to allege associational standing on behalf of the members of their unions,[2] in this case, Plaintiffs are unable to vindicate losses allegedly suffered by two non-union workers.

However, Plaintiffs claim damages as a result of having non-union workers perform work that should have been allocated to workers on the union's open employment list. Specifically, Plaintiffs argue that they have suffered damages from nonpayment of union dues and/or initiation fees. Pls.' Reply Br., 1. Plaintiffs have requested an accounting to determine what damages are owed to Plaintiffs as a result of the loss of these dues and fees. However, this theory of damages appears to rest on the assumption that, if Mr. Deily and Mr. Lefebure had not been hired by Defendant as non-union workers, they (or two other workers) would have joined the union, and paid the required dues and fees to Plaintiffs. However, the Court notes a possibility that, had Defendant not hired two non-union workers, Defendant may have hired from the union's open employment list. Had Defendant done so, there would be no loss of initiation

---

[2] "An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." United Food & Commercial Workers Union Local 751 v. Brown Group, 517 U.S. 544, 553 (1996) (citing Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977)).

fees or union dues, because those sums would have been paid to Plaintiffs by existing union workers hired by Defendant from the open employment list.  Therefore, the Court finds that a question of fact remains not only as to how much Plaintiffs are owed in dues and fees (which could be resolved with an accounting)—but whether Plaintiffs are owed dues and fees at all.

Accordingly, the Court awards summary judgment to Plaintiffs on the issue of Defendant's breach of the Short Form and TK Agreements.  However, the Court finds that the questions of whether any damages to Plaintiffs flow from the breach, as well as the amount of any such damages, if they exist, are questions of fact to be determined by a jury.

### E. Fringe Benefit Contributions

Plaintiffs next argue that Defendant has failed to make fringe benefit contributions to the Health, Pension, Annuity, Education, and Work Preservation Funds on behalf of Mr. Deily and Mr. Lefebure, and that Defendant ceased making contributions on behalf of Mr. Horstead and Mr. Bodkin in October 2010.  Pls.' Br., 4-6.  Mr. Bodkin and Mr. Horstead confirm this in their depositions.  See Dep. Bodkin, 48 ("Q: At any time in that approximately 13-month period, has Regional Elevator made contributions on Mr. Deily's behalf to the National Elevator Industry health plan, pension plan, annuity plans, retirement— A: No.  Q: —or any other National Plan? No."); Dep. Horstead, Pls.' Br., Ex. 4, 12 (confirming same); Dep. Bodkin, 51 (confirming same for Mr. Lefebure; Dep. Bodkin, 63-64 ("Q: Well, is it your testimony, then, in October 2010 Regional ceased contributing on your behalf and Mr. Horstead's behalf to the National Elevator Industry Benefit Plans?  A: Yes."); Dep. Horstead, 14 (confirming same).  Defendant contends that, if Plaintiffs wish to recover for damages to the Plans, the Plans must be named in their Complaint as indispensable parties, pursuant to Federal Rule of Civil Procedure 19.  Def.'s Br, 13.  Because the Plans are not named, Defendant asserts, and because "[t]here is nothing in the

record to suggest that Plaintiffs have any right to assert claims on behalf of the Plans," Defendant argues that Plaintiffs cannot recover for damages to the plans—particularly "[b]ecause the Plans have already asserted their own independent claims against Regional for the alleged non-payment of benefits . . . ." Id.

Plaintiffs rejoin that "[t]he employee benefit plans in question are specifically named in the Short Form Agreement and the TK Agreement as third party beneficiaries to the contracts between the Plaintiffs and Reional," such that "[t]he Plaintiff Unions . . . have the right to seek redress for the employee benefit plans just as much as they seek redress for employees represented by the Local 5 and for the Local 5 itself." Pls.' Reply Br., 4. Indeed, the Plans "are third-party beneficiaries of the collective bargaining agreement between [the company] and the Union." Agathos v. Starlite Motel, 977 F.2d 1500, 1505 (3d Cir. 1992) (citing Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 773 (9th Cir. 1986) ("In an action to recover delinquent contributions, the trust fund stands in the position of a third-party beneficiary of the collective bargaining agreement. A third-party beneficiary's rights are generally subject to any contract defense which the promisor could assert against the promisee if the promisee were suing on the contract." (citing J. Calamari & J. Perillo, The Law of Contracts § 17-8, at 623-24 (2d ed. 1977)))). Because the Plans are third-party beneficiaries of the Short Form and TK Agreements, the Court finds that Plaintiffs are able to sue for damages on their behalf.

Although Defendant argues that Federal Rule of Civil Procedure 19(a) requires that the plans be joined to this action, in order to avoid "substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest" of the unjoined party. Fed. R. Civ. P. 19(a)(1)(B)(ii). However, the Court notes that Rule 19(a) applies when the unjoined party "claims an interest relating to the subject of the action . . . ." Fed. R. Civ. P. 19(a)(1)(B). In this

case, the Plans have not claimed any interest in the pending action; moreover, the interest

claimed by the Plans in the Eastern District of Pennsylvania was settled in 2010.  The Court

notes that on October 12, 2010, the Trustees of the National Elevator Industry Pension, Health

Benefit, Educational, Elevator Industry Work Preservation Funds, Elevator Constructors Annuity

and 401(K) Retirement Plan entered a "Satisfaction of Judgment" in the Eastern District of

Pennsylvania proceeding, indicating that Defendant had fulfilled its obligation to the Plans

pursuant to their Settlement Agreement.  E.D.Pa. action 10-cv1238-EL, D.I. 10 (Oct. 12, 2010);

see also Settlement Agreement, Pls.' Br., Ex. 2, 43 ("Upon payment and clearance of all amounts

due pursuant to the terms of this Agreement, the Trustees will file a Satisfaction of Judgment

with the Court.").  That Settlement Agreement does not appear to contain, nor does Defendant

argue that it contains, a clause releasing the parties of any further liability.

 Given the fact that, as Defendant concedes, Defendant has been delinquent in payments

to the Plans, Plaintiffs must be awarded summary judgment for this breach of the collective

bargaining agreement.  The amount of damages, if any, to be awarded to Plaintiffs as a result of

this breach must be determined through an accounting that factors in the sums already paid by

Defendant to the Plans in the Settlement Agreement filed in the Eastern District of Pennsylvania.

See Pls.' Reply Br., 4 ("When the final accounting in this action takes place, Plaintiffs agree that

monetary damages for delinquent contributions to the employee benefit plans should be reduced

by any amount previously paid or paid pursuant to an order of the court in the independent

action.").

**F. Travel Time and Expensed for Employees Working in Both the Primary and Secondary Jurisdiction**

Plaintiffs state that the TK Agreement contains a separate payment schedule for employees working in both Local 5's primary and secondary jurisdictions, and that Defendant has breached this provision by failing to follow this payment schedule.  Pls.' Br., 7; see also TK Agreement, Pls.' Br., Ex. 2, 8-9 (Art. XIII).  Defendant argues that, even if it were true that Defendant has not paid its employees according to the payment schedule for employees who work in both jurisdictions, nevertheless Plaintiffs cannot recover because they have not presented evidence to show which employees would be due such payments, or for which periods of time the travel payment schedule would need to be followed.  Def.'s Br., 15.  As the party moving for summary judgment, Plaintiffs must either present evidence that shows the absence of a genuine issue of material fact, or Plaintiffs must show an absence of evidence to support Defendant's case.  Although Plaintiffs have shown that "[n]ot one of the numerous payroll journals contained in Exhibit 2 . . . contains even a single entry for travel time or travel expenses," Plaintiffs present no evidence that such entries should exist, and therefore have not met their burden on summary judgment.  Pls.' Br., 7.  Because Plaintiffs have offered no evidence identifying that any employees worked in both the primary and secondary jurisdictions, Plaintiffs' motion for summary judgment on this claim is denied.

**G. Other Relief**

Plaintiffs seek specific performance of the Short Form and TK Agreements.  Defendant argues that, because Plaintiffs did not explicitly state in their Complaint that they were requesting specific performance, they cannot seek such relief now.  Def.'s Br., 12.  Although Defendant contends that such a statement does not constitute a "short and plain statement of the

claim showing that the pleader is entitled to relief," and therefore violates Federal Rule of Civil

Procedure 8(a)(2), the Court notes that Rule 8(a)(2) requires a statement of a plaintiff's <u>claim</u>; it

does not touch on the issue of the form of relief for an alleged claim, and therefore does not

speak to Plaintiffs' request for specific performance.  Because Plaintiffs' Complaint did request

that the Court  "[g]rant other such relief deemed just and proper," Plaintiffs' claim for specific

performance is appropriately raised.  Compl., 6; <u>see</u> <u>Sheet Metal Workers' International</u>

<u>Association Local 19 v. Herre Brothers</u>, 201 F.3d 231, 249 (3d. Cir. 1999) (finding that an

amended complaint requesting "'such other relief as the Court deems just and reasonable'" was

"broad enough to encompass a request for specific performance . . . .").

    The Third Circuit has held that "[i]n any suit seeking specific performance, a grant of

equitable relief is available only as a substitute in the absence of an adequate remedy at law."  <u>Id.</u>

(internal quotation omitted).  The inadequacy of a legal remedy is found only where money

damages would be insufficient because (1) the thing being contracted for is of a "special nature"

that cannot be measured "in quantitative terms," or (2) where "damages are impracticable"

because they cannot be measured with certainty.  <u>Id.</u> at 249-50.  In <u>Sheet Metal Workers'</u>

<u>International Association Local 19 v. Herre Brothers</u>, which Plaintiffs cite, the Third Circuit

found that a district court did not err in calculating of damages by means of an accounting

through the date of the district court's judgment, and ordering specific enforcement of the

collective bargaining agreement from the date of the judgment through the expiration of the

agreement.  <u>Id.</u>  In that case, however, the trial court had awarded lost wages, which the Court of

Appeals agreed could not be confidently calculated because of "the uncertainty of [defendant

company's] future amount of work . . . ."  <u>Id.</u> at 250.  By contrast, in this case, the Court grants

damages only for contributions not rendered by Defendant to the Plans, and any loss of

membership dues or initiation fees that Plaintiffs might have lost as a result of the hiring of Mr.

Deily and Mr. Lefebure.  These losses are neither incompensable via quantitative means, nor are

they so uncertain that they cannot be calculated by means of an accounting that will terminate at

midnight on July 8, 2012, when the Short Form Agreement expires.  Accordingly, the Court

declines to order the equitable remedy of specific performance.

Plaintiffs also seek attorneys' fees and costs associated with the instant litigation.

However, Plaintiffs point to no statutory or contractual authority for such an award of fees and

costs.  Accordingly, this claim is denied.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is **GRANTED** as to

the claim that Defendant breached the collective bargaining agreement by hiring non-union

employees and paying those employees non-union wages.  A question of fact remains as to

whether or not any damages will be awarded to Plaintiffs in lost union initiation fees and

membership dues.

Moreover, Plaintiffs' motion for summary judgment on the claim that Defendant failed to

make contracted-for contributions to the Plans is **GRANTED**.  The Court orders Defendant to

submit to an accounting of the damages alleged as a result of Defendant's failure to contribute to

the Plans according to the Short Form and TK Agreements.  The accounting must subtract any

payment previously tendered by Defendant in its Settlement Agreement with the Plans in the

Eastern District of Pennsylvania, and must incorporate any damages incurred through the date of

this Opinion and its accompanying Order.

Plaintiffs' motion for summary judgment as to travel expenses and payment according to

the travel wages schedule is **DENIED**.

15

Plaintiffs' request for specific performance is **DENIED**.  Likewise, Plaintiffs' request for attorneys' fees and costs is **DENIED**.  An accompanying order shall issue today.


Dated: 3/13/2012                                             /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge